29791, 29792. JACKSON et al. v. FRATERNAL ORDER OF POLICE ATLANTA LODGE NO. 8 et al.; and vice versa.

PER CURIAM.
These two cases consist of a direct appeal by the city government (defendant below) and a cross appeal by city policemen (plaintiffs below) who had been demoted by the city government in rank without notice and a hearing prior to demotion.

The complaint of the demoted officers sought a declaratory judgment and permanent injunctive relief against the city government. The trial judge heard the case and then rendered a judgment which included written findings of fact and conclusions of law. The appeals by both sides to this court are from that judgment.

Both sides agreed upon the issues to be decided by the trial judge, and, as submitted to him, they were as follows: "Counsel for the parties in this case in accordance with the directions of the Court have met and conferred concerning

the issues which are presented to the court on this litigation and have agreed that the following questions must be determined by the court:

"1. Is the Reorganization Ordinance an amendment to the Charter or is it merely an ordinance to be adopted in accordance with the limited procedural requirements of Code Ann. § 69-1017 (b 1)?

"(a) If the Reorganization Ordinance is an amendment to the Charter was it properly enacted pursuant to the requirements of Code Ann. §§ 69-1017 (b 1) and 69-1020?

"(b) If the Reorganization Ordinance is an amendment to the Charter must it also be enacted in accordance with the provisions of Code Ann. § 69-1007?

"2. If the Reorganization Ordinance is not a Charter amendment but is merely an ordinance which must be adopted in accordance with the limited procedural requirements of Ga. Code Ann. § 69-1017(b 1), were the requirements of Code Ann. § 69-1017(b 1) met?

"3. Is the Reorganization Ordinance a local or special bill as those terms are used in Art. 3, Sec. 7, Par. 15 (Code Ann. § 2-1915) of the Constitution of Georgia of 1945; if so, were the requirements of Art. III, Sec. VII, Par. XV of the Constitution of Georgia of 1945 met?

"4. The parties agree that there is a probationary period to be served by any officer in any higher rank to which he may be promoted. The question to be determined by the Court is whether that probationary period is of six months duration or of twelve months duration.

"5. In determining what service time is applicable to the period, as found by the Court in No. 4 above, the following questions must be answered by the Court:

"(a) Is time served in an acting capacity included in that time required in the probationary period, i.e., does officer serving as "acting Lieutenant" and not receiving the pay of a Lieutenant accrue time toward the fulfillment of his probationary period as a Lieutenant?

"(b) Does time served in a higher acting rank count toward the required probationary period for any lower rank i.e., may a probationary Lieutenant count time as an acting Captain toward the fulfillment of the probationary requirement in the rank of Lieutenant?

"(c) Does time served in a higher "permanent" rank count toward the required probationary period for any lower rank, i.e., may a Lieutenant within the probationary period count time as a Captain toward the required probationary period as Lieutenant?

"The parties hereto stipulate that the attached personnel cards are accurate and correct and portray the periods of time served by plaintiffs in this case in various capacities within the Atlanta Police Department."

The judgment entered by the trial judge was as follows: "The within and foregoing case having come on before me for a final hearing, and counsel for all parties having been present, and after hearing argument and considering all documentary evidence introduced before me, and the parties having jointly prepared a memorandum at the direction of the Court as to the issues to be determined by the court, and after reviewing briefs filed as to all issues by counsel for all parties, the Court makes the following determinations:"

### Findings of Fact

"1. The Reorganization Ordinance was introduced before the Atlanta City Council on February 4, 1974; read before the Atlanta City Council for the first time; and referred to the Executive Committee of the Atlanta City Council for public debate.

"2. On February 18, 1974, the Reorganization Ordinance, as it had been amended by the Executive Committee, was read before the Atlanta City Council for the second time and "duly adopted" for the first time, as amended, and referred back to the Executive Committee where it was again debated publicly.

"3. On March 4, 1974, the Reorganization Ordinance, as it had again been amended by the Executive Committee, was read for the third time by the Atlanta City Council and "duly adopted" for the second time, as amended.

"4. On March 7, 1974, the Mayor of Atlanta approved the Reorganization Ordinance.

"5. On February 14, 21, and 28, 1974, a notice containing a synopsis of the proposed Reorganization Ordinance was published in the Atlanta Constitution, a newspaper of general circulation in the City of Atlanta.

Said notice stated that a copy of the proposed Reorganization Ordinance was on file in the office of the Clerk of the City of Atlanta and in the office of the Clerks of Fulton and DeKalb County Superior Courts for examination and inspection by the public.

"6. The proposed Reorganization Ordinance was filed with the Clerk of Fulton County Superior Court on or about February 15, 1974.

"7. The Proposed Reorganization Ordinance was filed with the Clerk of the DeKalb County Superior Court on February 12, 1974.

"8. A. Reginal Eaves was duly appointed Commissioner of Public Safety of the City of Atlanta on August 20, 1974. Following said appointment, certain of the plaintiffs in this action were demoted to the permanent rank held by them under the Civil Service Ordinance applying to the former Atlanta Police Department (now the Bureau of Police Services). In making said demotions, the demotions reduced each plaintiff to that rank in which the officer had served twelve months or more in the pay status of that rank. The plaintiffs were not credited with acting time in the probationary rank, nor acting or permanent status in a rank above the probationary rank."

Conclusions of Law

"1. The Reorganization Ordinance is not an amendment to the Charter of the City of Atlanta.

"2. The Reorganization Ordinance is an Ordinance, the final adoption of which was in accordance with the procedural requirements of Code Ann. § 69-1017(b 1).

"3. The Reorganization Ordinance is not a local or special bill as those terms are used in Art. III, Sec. VII, Par. XV of the Constitution of the State of Georgia and, therefore, did not have to be enacted in accordance with the procedural requirements of said constitutional provision.

"4. The Reorganization Ordinance did not have to be enacted in accordance with Ga. Code Ann. § 69-1007.

"5. The Reorganization Ordinance did not have to be enacted in accordance with Code Ann. § 69-1020, since said Reorganization Ordinance is not an amendment to the Charter of the City of Atlanta.

"6. The probationary period to be applied under the applicable provisions of law involved herein is twelve (12) months.

"7. Time served in an acting capacity in a higher rank shall not apply towards the twelve (12) months probationary service required in such higher rank.

"8. Time served in a higher acting or permanent rank does apply to the probationary period required for a lower rank."

### Order

"In view of the above Findings of Fact and Conclusions of Law, it is ordered and Adjudged that the prayers of plaintiffs' complaint as set forth in subparagraphs (b), (c), (d), (e), (f), (g), (h), and (j) are hereby denied.

"It is further ordered that any demotions of the named plaintiffs not in accordance with the above Conclusions of Law are hereby set aside and declared null and void and each named plaintiff shall assume the rank to which he would have been entitled upon applying the court's Conclusions of Law. The defendants shall reimburse each of said named plaintiffs for any loss in income from the date of demotion where applicable, under the terms of this Order."

We have carefully reviewed this record including the documentary evidence and the transcript of the hearing conducted by the trial judge; we conclude that the result reached by the trial judge was correct, with one exception, and that exception relates to conclusion of law No. 7.

We agree with all of the findings of fact entered by the trial judge, and we agree with all the conclusions of law entered by the trial judge except three, Nos. 1, 5, and 7. However, our disagreement with conclusions of law 1 and 5 does not, in our view, warrant a reversal of the judgment.

1. Conclusions of law No. 1 and No. 5 relate to the issue of whether the city government's "Initial Administrative Organization" ordinance enacted pursuant to Sec. 7-104 (Ga. L. 1973, p. 2249) of the city's new charter attained the status of "charter law." The trial judge held that it did not; but we think it did.

The 1973 Charter enacted by the legislature (Ga. L.

1973, p. 2188 et seq.) is admittedly ambiguous on this subject. Section 1-104 provides: "All executive and administrative powers of the City are hereby vested in the Mayor and such other administrative officers, departments and agencies created or continued by this Charter or now or hereafter established *by ordinance.*" P. 2191. Section 2-401 provides: "Every official act of the Council having the force and effect of law shall be by ordinance; . . ." P. 2198. Section 2-402 (a) provides: "No ordinance shall be adopted on the same date on which it is introduced, . . ." P. 2198. Section 3-301 (a) provides in part: "The departments of the City shall be created and established by ordinance, . . ." Ga. L. 1973, p. 2206.

All of these charter provisions indicate that a department of the city can be created or abolished by an ordinance introduced one day and then enacted by the council the next day.

On the other hand, § 7-104 provides: "Within six (6) months following the adoption of this Charter, the Mayor shall recommend for the Council's consideration a proposed ordinance which shall specify the number of departments of the City, and the duties and functions thereof. This ordinance shall also define the internal organization of each department including professional and technical qualifications of department directors. The final adoption of this proposed ordinance shall be the responsibility of the Council which may accept, reject or modify such proposed ordinance and such final adoption shall be according to the home rule procedure of section 69-1017(b) (1) of the Code of Georgia of 1933 as now [or] hereafter amended."

When we decided *Jackson v. Inman,* 232 Ga. 566 (207 SE2d 475) (1974), all of the members of the court indicated that the "Initial Administrative Organization" ordinance adopted in accordance with the home rule procedures of Code § 69-1017(b 1) became a part of the city charter by home rule enactment. This meant that a city department created by a home rule enactment that became a part of the charter could not be abolished by the enactment of a mere ordinance that could be introduced one day and enacted by the council the second day. It was and is our view that such a department, once having achieved char-

ter status, could be abolished only by another home rule charter amendment requiring advertisements in advance and adoption by the council at two consecutive regular meetings as required by Code § 69-1017 (b 1).

In the dissenting opinion in *Jackson v. Inman,* supra, the two dissenting Justices said: "The ordinance [new charter?] provides that the mayor recommend for the council's consideration a proposal which shall specify the number of departments and the duties and the functions thereof and when adopted shall have the force of statutory law under the Home Rule Provisions of Code Ann. § 69-1017 (b 1)." P. 578.

On motion for rehearing, the other five members of the court said: "Nowhere in the pleadings or argument, prior to the motion for rehearing, was the contention made that the ordinance was not enacted pursuant to § 7-104 of the new charter. We consider this to be important because § 7-104 of the new charter permits the charter itself to be amended by a 'home rule ordinance.' The enactment of such an ordinance by the council amounts to an amendment of the city's new charter. The Home Rule Act of 1965 provides that a municipality can amend its charter in any manner whatsoever except for the limitations prescribed in section 4 of that Act. There is no limitation contained in section 4 that prevents a municipality from amending its charter so as to abolish any or all departments contained in its municipal government. Therefore, a 'home rule' charter amendment can be enacted by ordinance, and the new charter amendment so enacted supersedes and repeals any conflicting provisions contained in the charter prior to amendment." P. 580. We believed then, as we do now, that the "Initial Administrative Organization" ordinance was meant to become a part of the charter so that it could not be summarily repealed by a mere ordinance that could be enacted by the council in a 2-day period

In enacting the "Initial Administrative Organization" ordinance specified by § 7-104 of the new Charter, the new city government complied with all legal requirements except one. That one exception was the failure to file the duly enacted ordinance with the clerk of superior court as required by Code Ann. § 69-1020. The

ordinance was properly advertised in advance by publishing "a synopsis of the proposed amendment," it was "duly adopted at two regular consecutive meetings of the municipal governing authority," and it was subsequently filed in the office of the Secretary of State in the State Capitol. Code Ann. §§ 69-1017 (b 1) and 69-1020.

In these circumstances we hold that this amounted to substantial compliance with the legal requirements necessary to effect a charter change under the 1965 Home Rule Act. After many months of operation under the ordinance as adopted and filed in the office of the Secretary of State, this court is unwilling to hold that the mere failure to also file the completed ordinance in the office of the clerk of court made it an ineffective charter amendment.

We therefore hold that the ordinance here attacked is a part of the Atlanta Charter, and any change in it must be effected by a Home Rule Charter Amendment ordinance and not by a mere ordinance that can be enacted by the council in a minimum of 2 days.

2. We disagree with the trial court's conclusion of law no. 7, and the judgment on this issue alone must be reversed. Conclusion of law no. 7 held that the officers should not be credited with time in acting higher grades for probationary purposes in those grades. As far as we can tell, this conclusion was not required by any statute, or ordinance of the city.

The city argues the result reached by the trial court is correct because there were applicable charter provisions (§§ 10.3.3 and 10.3.4) in the old city charter which provided, in effect, that the assignment of an officer to an acting higher grade was not to be considered a promotion for civil service purposes. While this is correct, it appears to us that these sections merely provide that an assignment to an acting higher grade was not considered as a permanent promotion because of the required probationary period before the promotion became final. We agree that service in a higher grade carries no civil service status until the promotion becomes final at the expiration of a satisfactory probationary period. In our view, these sections of the old charter do not require that the time served in the acting higher grade should not be

credited on the total probationary period required in the higher grade before the promotion becomes final. The fact that no civil service rights attach to the acting higher grade should not deprive the officer of the time served in that grade for probationary purposes.

It has been the practice of the city for a long time to promote an officer to an acting rank as needed in the police force. As soon as the board of aldermen approved the pay slot for the higher grade, it was considered as a permanent promotion but actually it was not permanent because of the probationary period required in the higher grade before the so-called permanent promotion became final. The officer assigned to the acting higher grade wore the insignia, carried the rank and had all the burdens and responsibilities of the higher grade during the period he acted in the higher grade. The acting higher rank position had all the characteristics and duties of actual promotion, except the officer did not receive the pay of the higher grade until it was approved by the board of aldermen.

We see no legal reason why time in acting grade should not count as probationary time in that grade. The city created the "acting" positions and derived the benefit of the officers' services in those jobs even before they were paid in the higher grade. Their duties were the same as their duties were after the city began paying them in the higher grade. In a real sense, they were more on probation in the "acting" higher grade than they were after they began receiving the pay of the higher grade. It is our view that the time in those positions ought to be credited on the required probation period in those higher grades. Therefore, we hold that these officers must be credited with the time actually served in "acting" higher grades for all probationary purposes.

Conclusion of law no. 7 was erroneous, and the judgment in that regard must be reversed. The judgment below in all other respects is affirmed.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Nichols, C. J., and Undercofler, P. J., who concur in Division 2 and the judgment only.*

ARGUED APRIL 15, 1975 — DECIDED SEPTEMBER 9, 1975.

*Henry L. Bowden, John E. Daugherty, Henry R. Bauer, Jr.,* for appellants.

*Garland & Garland, Edward T. M. Garland, John A. Nuckolls, Jackson Cook,* for appellees.

UNDERCOFLER, Presiding Justice, concurring in the judgment.

I would affirm the trial court's decision discussed in Division 1. In my opinion the "Reorganization Ordinance" is not an amendment to the Charter of the City of Atlanta. It is an ordinance adopted in accordance with Code Ann. § 69-1017 (b 1).

I am authorized to state that Chief Justice Nichols joins this concurring opinion.

## CORRECTIONS

Page 90, line 6: Change "Tarver" to "Traver."

Page 168, line 9 from bottom: Change "974" to "947."

Page 354, line 22: Add "Jackson S. Cooley" to counsel for appellants.

Page 361, line 1: Rearrange counsel as follows: end line 1 with word "General"; Begin new paragraph: "Omer W. Franklin, Jr., Robert H. Davis, Jr., James E. Spence, Jr. for State Bar of Georgia, amicus curiae."

Page 468, line 12 from bottom: Change "Partin, H." to "Partain, III."

Page 505, line 14: After partial word, "-andra," add comma.

Page 577, line 2 from bottom Delete "David Crockett" from counsel.

Page 631, line 25: Change "D. Meade Field" to "D. Meade Feild."