NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: January 28, 2025

S24A1386. NELSON v. STRICKLAND et al.

PINSON, Justice.

Henry Strickland lost a close election for city commissioner in Waycross, Georgia, and he filed a petition to contest the election. The trial court granted the petition, concluding that the election had used an outdated map of voting districts from 2005 and that, based on the districts as set by the "right" map, 32 voters voted in the wrong districts, which was enough to have potentially affected the outcome of Strickland's election. On that basis, the court vacated the election and ordered that a new election take place in November 2024 using the most recent election map, which was adopted in 2011. Alvin Nelson, Strickland's opponent and winner of the election, appealed, and we granted his motion to stay pending the appeal of the trial court's order vacating the election and ordering a new

one.

We now reverse the trial court's judgment. Strickland's challenge is based on the assumption that the 2011 map was in effect for the 2023 election, and that because the 2005 map was used instead, enough votes were cast in the wrong districts to call the election results into doubt. But as Nelson contends, the 2011 map never became effective, because none of the filings with the Secretary of State and clerk of the superior court required by OCGA § 36-35-5 to make the charter amendment effective have been made. Because the 2011 map was not effective at the time of the election, there is now no basis in the record for the trial court's conclusion that enough illegal or irregular votes were counted to change or cast doubt on the outcome of the election, which leaves no ground for vacating the election. Strickland's petition must therefore be rejected.

1. In 2011, the City of Waycross amended its charter to bring its voting districts up to date after the 2010 national census. As explained further below, the City's power to do that came from the Home Rule Act of 1965, which imposes conditions and prescribes

2

procedures for home-rule charter amendments. Among other things, amendments to a city charter made pursuant to a city's home rule powers do not become effective "until a copy of the amendment or revision . . . has been filed with the Secretary of State and in the office of the clerk of the superior court of the county of the legal situs of the municipal corporation." OCGA § 36-35-5. The City did not file its 2011 charter amendment with either the Secretary of State or the clerk of superior court. But the City used the 2011 voting districts and the associated maps in city elections from 2011 until 2022.[1]

In 2022, the City transitioned from paper maps to digital maps. At some point, the county election supervisor asked that the most updated version of the digital map be sent to him by email. Somehow, the map that was sent to the election supervisor was not the updated 2011 map, but a map from 2005 that had been prepared in response to the 2000 census. As a result, the 2005 map was used in

---

[1] The City did not update its districts or maps after the 2020 Census because it determined that the population had not changed enough to justify an update.

city elections from 2022 forward.

In November 2023, Nelson, the appellant here, was elected as Waycross City Commissioner for District 5, in an election that used the 2005 map. Nelson's opponent in that election was Strickland, one of the appellees here.

After the election was certified, Strickland filed a pro se election contest under OCGA § 21-2-521. In his filings, Strickland alleged that the Board of Elections incorrectly used the 2005 map for the election, and that using that map instead of the 2011 map had resulted in 32 voters casting ballots in the "wrong" districts. Twenty-three voters who lived in District 1 according to the 2011 map had instead voted in District 5, and nine voters who resided in District 5 according to the 2011 map had instead voted in District 4 (and thus did not vote in the election for District 5's commissioner). The Ware County Board of Elections — the other appellee here — stated in its verified answer that 32 voters had voted "in an incorrect district." Strickland pointed out that Nelson won the District 5 election by

4

only 18 votes, and the Board expressed its belief that the discrepancy "would warrant a re-vote."

After a hearing, the court granted relief to Strickland. The court denied Nelson's motion to dismiss Strickland's petition for insufficient process and insufficient service of process, and it rejected Nelson's argument that the petition should have been dismissed because Strickland did not pursue it expeditiously. On the merits, the court found that there were irregularities in the 2023 election based on the use of the 2005 map rather than the 2011 map. The court reasoned that the use of the older map had resulted in some voters voting in the "wrong" district, by which it meant a district other than the one established by the "right" 2011 map. The court therefore vacated that election and ordered a new election to take place "as soon as practicable and in accordance with Georgia law." The new election was later set for November 5, 2024.

Nelson appealed both orders, and we granted his request for a stay of the trial court's orders pending appeal.

2. Under our Election Code, a candidate for office may contest

an election on the ground that "illegal votes have been received or legal votes rejected at the polls sufficient to change or place in doubt the result." OCGA §§ 21-5-521, 21-5-522 (3). If a petitioner is able to prove that enough illegal or irregular votes were counted to change or place in doubt the result of the contested election, a court has the power to vacate that election. See *Martin v. Fulton County Board of Registration and Elections*, 307 Ga. 193, 222 (3) (a) (835 SE2d 245) (2019). In making that showing, the petitioner "need not establish for whom the disputed electors cast their ballots," only that enough disputed ballots were counted that the result of the election could have been affected. See *Smith v. Long County Bd. of Elections and Registration*, 312 Ga. 306, 311-312 (1) (862 SE2d 517) (2021). That was the nature of Strickland's election contest here. He alleged that the 2011 map reflected the election districts in effect at the time and should have been used for this election, and that because the 2005 map was used instead, 32 voters voted in the "wrong" districts, in an election decided by only 18 votes. The trial court agreed and vacated the election on that basis.

6

On appeal, Nelson disputes the premise that the 2011 map was the map in effect at the time of the election here. He contends that a step required by statute to make the 2011 map effective — making certain filings with the Secretary of State and the superior court clerk — has not happened. If Nelson is right, then Strickland's claim that 32 voters voted in the "wrong" districts — which is based entirely on the assumption that those voters were supposed to vote in the districts set by the 2011 map — would lack any basis in the record. All of which is to say that the merits of this election contest turn on whether the 2011 map was effective at the time of the election. So that question is our focus here, and we review de novo the trial court's legal conclusion that the 2011 map was the effective map at the time of the election. See *Parham v. Stewart*, 308 Ga. 170, 176 (4) (839 SE2d 605) (2020) (applying de novo review to legal question of whether summary judgment was proper in a post-election contest).

The City's authority to enact new election district maps comes from the Municipal Home Rule Act of 1965. See OCGA § 36-35-1 et

7

seq. The Home Rule Act generally gives municipalities the legislative power to adopt "clearly reasonable ordinances, resolutions, or regulations relating to its property, affairs, and local government" that are not inconsistent with the Constitution or preempted by state law. OCGA § 36-35-3 (a). The Act also authorizes certain specific local laws. Relevant here, the Act allows a municipality, after a national census, to "reapportion the election districts from which members of the municipal governing authority are elected." OCGA § 36-35-4.1 (a). And the Act lays out the procedural steps through which a municipality can exercise that power: A city that wants to reapportion its electoral districts "shall by ordinance amend its charter." OCGA § 36-35-4.1 (b). That ordinance must be "duly adopted at two regular consecutive meetings of the municipal governing authority," OCGA § 36-35-3 (b) (1), and the city must publish notice of the proposed amendment beforehand, see id. And finally, at issue here, OCGA § 36-35-5 requires certain filings to be made to make the amendment effective. That provision says that

[n]o amendment or revision of any charter made pursuant

8

to this chapter shall become effective until a copy of the amendment or revision, a copy of the required notice of publication, and an affidavit of a duly authorized representative of the newspaper in which the notice was published, to the effect that the notice has been published as provided in this chapter, has been filed with the Secretary of State and in the office of the clerk of the superior court of the county of the legal situs of the municipal corporation.

OCGA § 36-35-5.

Under the plain language of OCGA § 36-35-5, an amendment or revision of a charter made pursuant to a city's home rule powers is not effective until a copy of the charter amendment or revision (among other things) has been filed with the Secretary of State and the superior court clerk. That language provides that "[n]o" such amendment or revision "shall become effective" until those steps are taken. When the word "shall" is accompanied by a negative word (like "not" or "no") in this way, the phrase including the "shall" is ordinarily read as denying permission to do a thing or, as here, not permitting a thing to happen. Put another way, the use of "shall" in that kind of phrase is generally mandatory — "shall not" means

"may not" rather than "should not." See, e.g., *Premier Pediatric Providers, LLC v. Kennesaw Pediatrics, P.C.*, 318 Ga. 350, 360 (4) (898 SE2d 481) (2024) (explaining that the statutory language "[n]o appeal shall be dismissed by the appellate court" in OCGA § 5-6-48 (c) means that "an appellate court may not dismiss an appeal" under that statute); *Collington v. Clayton County*, 318 Ga. 29, 31 (1) & n.4 (897 SE2d 361) (2024) (statutory language in OCGA § 36-92-3, providing that a person suing a local government entity under the statutory waiver of sovereign immunity for motor vehicle claims "shall not name the local government officer or employee individually," means that claims against a government employee in his individual capacity were improper and foreclosed); *Ford Motor Co. v. Cosper*, 317 Ga. 356, 358 (2) (893 SE2d 106) (2023) (statutory language in OCGA § 51-1-11 (b) (2), which provides that "[n]o action shall be commenced pursuant to this subsection with respect to an injury after ten years from the date of the first sale for use or consumption or the personal property causing or otherwise bringing about the injury," means that claims filed under that subsection more than ten

10

years after the first sale for use or consumption of the product are "completely barred"). Accord *Dep't of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 112 (I) (B) (140 SCt 1959, 207 LE2d 427) (2020) (statutory language of 28 USC § 1252 (a) (2) (A) (i) providing that "no court shall have jurisdiction to review" executive determinations about expedited removal means that courts "may not" review those determinations); *Ross v. Blake*, 578 U.S. 632, 638-639 (II) (A) (136 SCt 1850, 195 LE2d 117) (2016) (statutory language of 42 USC § 1997e (a) providing that "[n]o action shall be brought" until administrative remedies are exhausted is "mandatory" and means, when "said more conversationally," that prisoners "may not bring any action" until they have exhausted administrative remedies). And that is the best reading of the language here, too. We see no "contextual basis" for a different reading, *Bell v. Hargrove*, 313 Ga. 30, 34 (2) n.5 (867 SE2d 101) (2021), like a qualification of or exception to the statute's clear declaration that "[n]o amendment or revision . . . shall become effective until" the required filings happen. So we conclude that an amendment or revision of a charter made pursuant to a city's

11

home rule powers is not effective until a copy of the amendment or revision has been filed with the Secretary of State and the superior court clerk.

The trial court erred by treating OCGA § 36-35-5 as "directory" rather than mandatory because failing to file a copy of the amendment did not "prejudice . . . the substantial rights of interested persons," citing *Barton v. Atkinson*, 228 Ga. 733 (187 SE2d 835) (1972). In that case, we said that

> this court has held that language contained in a statute which, given its ordinary meaning, commands the doing of a thing within a certain time, when not accompanied by any negative words restraining the doing of the thing afterward, will generally be construed as merely directory and not as a limitation of authority, and this is especially so where no injury appeared to have resulted from the fact that the thing was done after the time limited by the plain wording of the Act.

*Barton*, 228 Ga. at 739 (1). Putting aside whether that statement from *Barton* remains an accurate statement of law,[2] it does not apply

---

[2] This statement from *Barton* is out of step with how we have assessed the "mandatory or directory" question in our more recent decisions, which focus on context to determine the meaning of the word "shall" rather than assessing prejudice. Compare, e.g., *Bell*, 313 Ga. at 34 (2) n.5 (explaining that "'shall' is

here, where the language at issue does not "command[ ] the doing of a thing within a certain time" but instead sets conditions that must be satisfied before a particular kind of legal act becomes effective.[3]

For its part, the Board contends that the 2011 map should still be considered effective because the City "substantially complied" with the requirements for amending its charter. The Board points out that the City complied with most of the statutory requirements for amending its charter and it has been using the 2011 map for

---

'generally construed as a mandatory directive'" unless "the context in which it is used indicates a permissive instruction" (quoting *Carr v. State*, 303 Ga. 853, 865 (5) (a) n.15 (815 SE2d 903) (2018))).

[3] The trial court also concluded that applying OCGA § 36-35-5 to "invalidate" the 2011 map would "violat[e]" the constitutional mandate of "one person, one vote." The trial court's order offers no basis for that statement in the law or the record of this case, and it is not clear what role, if any, it played in the trial court's analysis. To the extent the trial court was suggesting that the statute should be interpreted differently under the doctrine of constitutional avoidance, that doctrine applies only when the statute in question is ambiguous, see *Nordahl v. State*, 306 Ga. 15, 20 (1) (829 SE2d 99) (2019) ("[T]he canon of constitutional avoidance is a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that [the legislature] did not intend the alternative which raises serious constitutional doubts.") (citation and punctuation omitted), which OCGA § 36-35-5 is not, so any such argument would fail. As for any underlying question under the United States Constitution, Strickland did not challenge the constitutionality of the 2005 map that was used in the 2023 election, under a "one person, one vote" theory or otherwise, so no freestanding constitutional claim was properly before the trial court in this case.

more than a decade. This is good enough, the Board says, and in support, it relies on *Jackson v. Fraternal Order of Police Lodge No. 8*, 234 Ga. 906 (218 SE2d 633) (1975). In *Jackson*, we upheld a city's charter amendment where the city had already operated under the amendment for months and had shown "substantial compliance" with the Home Rule Act by following all the statutory requirements — including filing the amendment with the Secretary of State — but did not file the amendment with the clerk of superior court. See id. at 913 (1). Under those circumstances, we said we were "unwilling to hold that the mere failure to also file the completed ordinance in the office of the clerk of court made it an ineffective charter amendment." Id.

*Jackson*'s implicit holding that "substantial compliance" with the law is all that is required to effectively amend a city charter under the Home Rule Act is subject to question. Substantial compliance is a concept that has ordinarily applied to excuse relatively minor or immaterial failures of public officers to comply with duties or

14

requirements imposed on them by law, or similarly minor "discrepancies in format or phraseology" between what a statute requires and what a person does. See, e.g., OCGA § 1-3-1 (c) ("A substantial compliance with any statutory requirement, especially on the part of public officers, shall be deemed and held sufficient[.]"); *Martina v. Elrod*, 293 Ga. 538, 539 (1) (748 SE2d 412) (2013) (explaining that "[t]he doctrine of substantial compliance, though tolerant of variations in the mode of expression utilized to satisfy statutory requisites, nonetheless requires actual compliance as to all matters of substance," and that "minor discrepancies in format or phraseology are acceptable, but the omission of substantive elements is not") (citations and punctuation omitted). But as we just discussed, OCGA § 36-35-5 does not impose a duty or command the doing of anything; it simply identifies conditions that must be satisfied before a charter amendment becomes effective, and it denies permission to treat such an amendment as effective in the absence of those conditions. It is not at all clear that the concept of "substantial compliance" maps onto this kind of statute.

Despite these concerns, we need not disturb *Jackson* here. Even assuming substantial compliance is enough to allow a charter amendment to go into effect, the City here did not even substantially comply. As the trial court found, although the redistricting charter amendment was published and adopted by the City, none of the required filings was made, with anyone. That makes this case different than *Jackson*, where the City filed a copy of its amendment with the Secretary of State but not with the superior court clerk. And that difference matters, because filing with the Secretary of State is how a municipal charter amendment is recorded in the published laws of the State.[4] In any event, making no filings of any kind could hardly be considered "substantial compliance" with a statutory requirement that consists entirely of making filings, see OCGA § 36-35-5.

Because the conditions set by OCGA § 36-35-5 for making the

---

[4] The statute requires the Secretary to "provide for the publication and distribution of all such amendments and revisions at least annually," see OCGA § 36-35-5, and an affidavit from a member of the Secretary's office confirms that municipal charter amendments are published in the Official Code of Georgia Annotated, under Local and Special Laws, once they are filed with that office.

charter amendment here effective were not satisfied, the 2011 election map for the City of Waycross was not effective at the time of the 2023 election at issue.[5] And with that premise gone, Strickland's challenge fails. The challenge relied on the assumption that the 2011 map was in effect and thus should have been used for the 2023 election. That assumption about the map was the sole basis for Strickland's contention, and the trial court's conclusion, that enough votes were cast in the wrong districts to call the election results into doubt. Because the 2011 map was not effective at the time of the election, there is now no basis in the record for that conclusion, so this election challenge fails. See *Martin*, 307 Ga. at 222-223 (3) (a).

*Judgment reversed. All the Justices concur, except Boggs, C.J., not participating.*

---

[5] Nothing in this decision should be read to preclude the City from making the filings required by OCGA § 36-35-5 to make the 2011 map effective.

17