NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: February 18, 2025

S24G0855. CLARK v. THE STATE.

LaGrua, Justice.

We granted certiorari in this case to determine whether the

notice requirement articulated in OCGA § 17-10-1 (a) (1) (B)[1] is

---

[1] This statute provides in relevant part:

When a defendant with no prior felony conviction is convicted of felony offenses or is charged with felony offenses . . . , and the court imposes a sentence of probation or not more than 12 months of imprisonment followed by a term of probation, the court shall include a behavioral incentive date in its sentencing order that does not exceed three years from the date such sentence is imposed. Within 60 days of the expiration of such incentive date, if the defendant has paid all restitution owed; not had his or her probation revoked in the immediately preceding 24 months, or when the court includes a behavioral incentive date less than two years from the date a sentence was imposed, not had his or her probation revoked during such period; and not been arrested for anything other than a nonserious traffic offense as defined in [OCGA § 35-3-7], the Department of Community Supervision shall notify the prosecuting attorney and the court of such facts. The Department of Community Supervision shall provide the court with an order to terminate such defendant's probation which the court shall execute unless the court or the prosecuting attorney requests a hearing on such matter within 30 days of the receipt of such order. The court shall set the matter for a hearing as soon as

mandatory, and if so, what remedy exists when the Department of Community Supervision ("DCS") fails to provide notice in compliance with this statute. For the reasons that follow, we conclude that, although the Court of Appeals erred in determining that the notice requirement in OCGA § 17-10-1 (a) (1) (B) is directory rather than mandatory, the Court of Appeals correctly concluded that, even when DCS fails to comply with this notice requirement, termination of the defendant's sentence is not automatic, and the trial court maintains the discretion to decide whether to terminate the defendant's probation. Therefore, we affirm.

1. *Pertinent Facts and Procedural History*

On May 18, 2017, Marvante Clark was indicted by a Henry County grand jury for burglary, theft by receiving stolen property, two counts of violation of the Georgia Controlled Substances Act, OCGA § 16-13-20, et seq., obstruction of an officer, and possession

---

possible but not more than 90 days after receiving the order to terminate. The court shall take whatever action it determines would be for the best interest of justice and the welfare of society.
OCGA § 17-10-1 (a) (1) (B) (i).

of marijuana, less than an ounce. On February 12, 2018, Clark entered a guilty plea to all counts except one count of violation of the Georgia Controlled Substances Act, which was nolle prossed by the trial court. The trial court sentenced Clark as a first offender to a total of ten years, with one year to be served in confinement and the remainder to be served on probation.

On January 25, 2023, the State requested, and the trial court issued, a warrant for Clark's arrest, alleging that Clark violated his probation on January 7, 2023, by committing a new offense of theft by receiving stolen property. Clark was arrested shortly thereafter, and in March 2023, Clark filed a motion to terminate his probation, contending that his "probation should have terminated as a matter of law" on February 12, 2021, under the retroactive application of OCGA § 17-10-1 (a) (1) (B).[2]

---

[2] When the trial court sentenced Clark as a first offender on February 12, 2018, the early termination provisions of OCGA § 17-10-1 (a) (1) (B) (i) were not yet in effect. However, the statute was amended to include those provisions in May 2021 and given retroactive effect. See Ga. L. 2021, p. 223, § 1. See also OCGA § 17-10-1 (a) (1) (B) (ii) (providing that subparagraph (a) (1) (B) (i) of the statute "is intended to be retroactive").

In support of Clark's motion, he asserted that his February 2018 sentencing order, which imposed "no more than twelve months of imprisonment followed by probation," did not include a behavioral incentive date, and pursuant to OCGA § 17-10-1 (a) (1) (B) (ii), where a behavioral incentive date has not been included in an original sentencing order, the "behavioral incentive date shall be three years from the date such sentence was imposed." OCGA § 17-10-1 (a) (1) (B) (ii). Clark further argued that, under OCGA § 17-10-1 (a) (1) (B) (i), if—within 60 days of the expiration of the behavioral incentive date—the defendant has (1) paid all restitution owed; (2) not had his or her probation revoked in the immediately preceding 24 months; and (3) not been arrested for anything other than a nonserious traffic offense, DCS is required by the statute to "provide the Court with an order to terminate probation." Clark claimed that, as of February 12, 2021—three years from the date he was sentenced— he "did not owe restitution, did not have his probation revoked in the immediately preceding 24 months, and did not have any new arrests," but DCS did not provide the trial court with notice of

4

Clark's compliance and a proposed[3] order to terminate his probation as required by law. Clark contended that, because DCS failed to provide the requisite notice to the trial court, his probation should have "automatically terminated" under OCGA § 17-10-1 (a) (1) (B) (i).

The trial court heard Clark's motion on April 4, 2023. Following the hearing, the trial court issued a written order on April 28, 2023. In the trial court's April 28 order, the trial court confirmed that "no behavioral incentive date was included in [Clark's] sentencing order" and that OCGA § 17-10-1 (a) (1) (B) (ii) provides that "a behavioral incentive date is retroactively applied to situations such as this," which date "shall not exceed three years

---

[3] DCS does not have the authority to issue an order terminating a defendant's probation, as such authority lies strictly with the trial court. See OCGA § 15-1-3. See also OCGA § 42-8-37 (b). Accordingly, any order presented by DCS to the trial court in this context would be a "proposed" order unless and until it is executed and entered by the trial court. See OCGA § 17-10-1 (a) (1) (B) (i) ("[DCS] shall *provide the court with an order* to terminate such defendant's probation which *the court shall execute* unless the court or the prosecuting attorney requests a hearing on such matter . . . ." (emphasis supplied)); OCGA § 42-8-37 (d) (2) ("When *the court* is *presented with such order*, *it shall execute* the order to terminate unless the court or the prosecuting attorney requests a hearing on such matter . . . ." (emphasis supplied)).

from the date the sentence is imposed." As to Clark's argument that, as of February 12, 2021, he had "met all three factors" provided in OCGA § 17-10-1 (a) (1) (B) (i) and so "his probation should have terminated as a matter of law," the trial court explained that, "even if a defendant meets all three statutory factors to be eligible for a termination of his probation, the statute provides additional procedural requirements for the defendant's probation to terminate."

Relevant here, the trial court found that "the statute gives an opportunity for the State to request a hearing in the matter of the defendant's termination within 30 days of the receipt of a [proposed] order to terminate the defendant's probation." See OCGA § 17-10-1 (a) (1) (B) (i). The trial court also found that the State did not have "an opportunity to request a hearing in the matter" because DCS never provided the trial court with a proposed order to terminate Clark's probation. See id. The trial court thus held that, after "interpreting the statute as a whole," Clark's probation "did not terminate as a matter of law on his behavioral incentive date."

6

Additionally, while not reflected in its written order, the trial court also ruled during the April 4 hearing that, "based upon the circumstances of this case," terminating Clark's probation would not be "in the best interest of justice and the welfare of society." OCGA § 17-10-1 (a) (1) (B) (i). For these reasons, the trial court denied Clark's motion.

Clark timely appealed the denial of his motion to the Court of Appeals, contending that

> the trial court erred in denying his motion to terminate probation where DCS failed to present an order to terminate his probation following the retroactive application of the behavioral incentive date under OCGA § 17-10-1 (a) (1) (B). Stated differently, Clark asserts that the DCS was required to notify the State and the trial court of Clark's successful completion of three years' probation and that, in the absence of such notice, his probation terminated as a matter of law.

*Clark*, 371 Ga. App. at 38. On March 12, 2024, the Court of Appeals issued a decision affirming the trial court. Id. at 37.

The Court of Appeals first addressed the retroactivity of OCGA § 17-10-1 (a) (1) (B) and noted that, "at the time the trial court sentenced Clark as a first offender on February 12, 2018, the early

7

termination provisions of OCGA § 17-10-1 (a) (1) (B) were not available to him." *Clark*, 371 Ga. App. at 39 (a) (citing *Mays v. State*, 345 Ga. App. 562, 564-565 (814 SE2d 418) (2018)). However, "the most recent amendment, effective May 3, 2021, gave the statute retroactive effect." Id. (citing Ga. L. 2021, p. 223, § 1). See also OCGA § 17-10-1 (a) (1) (B) (ii) (providing that the statute "is intended to be retroactive"). The Court of Appeals thus concluded that the provisions of OCGA § 17-10-1 (a) (1) (B) as amended "are now *generally available* to Clark." *Clark*, 371 Ga. App. at 39-40 (a) (emphasis in original).

Turning to the applicability of OCGA § 17-10-1 (a) (1) (B) in Clark's case, the Court of Appeals noted that, when a defendant has met the conditions specified in the statute—i.e., paid all restitution owed, not had his probation revoked in the immediately preceding 24 months, and not been arrested for anything other than a nonserious traffic offense—the statute provides that DCS "*shall* notify the prosecuting attorney and the court of such facts" within 60 days of the expiration of the defendant's behavioral incentive

8

date, and DCS "*shall* provide the court with an order to terminate such defendant's probation which the court *shall* execute unless the court or the prosecuting attorney requests a hearing on such matter within 30 days." *Clark*, 371 Ga. App. at 40 (b) (quoting OCGA § 17-10-1 (a) (1) (B) (i); emphasis in original). The Court of Appeals then explained that "the manner in which Clark may benefit" from this statute "initially turns upon the use of the word 'shall'" because this term can be construed either as a "mandatory directive" or as "merely directory"—which would be the proper construction when it "was *not accompanied by any negative words restraining the doing of the thing afterward*." Id. at 41 (b) (citation and punctuation omitted; emphasis in original).

The Court of Appeals concluded that, as used in OCGA § 17-10-1 (a) (1) (B), the term "shall" is meant to be "directory rather than mandatory." *Clark*, 371 Ga. App. at 42 (b). The Court of Appeals reached this conclusion based on the following determinations: (1) the statute "does not contain any negative words which would prevent DCS from sending notice of a probationer's status outside

the 60-day window prescribed in the statute"; (2) the statute does not "in any other manner declare that a designated result will follow noncompliance or that the agency will cease to have authority to take specified action after 60 days"; (3) "even assuming a lack of performance by DCS, i.e., that it did not provide the prescribed notice within the 60-day window, probation is viewed generally as a matter of judicial grace since there is no substantial right to receive a probated sentence"; and (4) "a failure by DCS to provide notice within the 60-day window will result in no injury or prejudice to the substantial rights of interested persons." Id. (citing *Sanchez v. Walker County Dept. of Family and Children Svcs.*, 237 Ga. 406, 410 (229 SE2d 66) (1976)).

The Court of Appeals acknowledged that, in this case, DCS "did not provide notice, at this time or at any other time, to the State and the trial court of the status of Clark's probation as required by OCGA § 17-10-1 (a) (1) (B) (i)." *Clark*, 371 Ga. App. at 42 (b). But the Court of Appeals disagreed with Clark's contention that, based upon DCS's failure to provide notice, "his probation stands

10

terminated as a matter of law." Agreeing with the trial court's analysis, the Court of Appeals observed that "DCS's notice to the State and the trial court during the 60-day window merely triggers a procedure that, in part, requires DCS to submit an order terminating probation," which the trial court "shall execute *unless* the court or the prosecuting attorney requests a hearing on such matter within 30 days of the receipt if such order." Id. at 43 (c) (emphasis in original).

To that end, the Court of Appeals explained that OCGA § 17-10-1 (a) (1) (B) (i) "grants the trial court the overarching discretion to 'take whatever action it determines would be for the best interest of justice and the welfare of society' once notice and an order of termination have been presented by DCS, regardless of whether the State requests a hearing." Id. And the Court of Appeals determined that, based upon this clear language, "termination of probation is not automatic even if DCS complied with its initial duty to provide notice to the State and the trial court." Id. Concluding that "the trial court correctly applied these principles when it denied Clark's

11

motion to terminate probation" in this case, the Court of Appeals affirmed the trial court's ruling. Id. at 44.

We granted Clark's petition for certiorari and asked the parties to address whether the Court of Appeals erred in concluding that the notice requirement of OCGA § 17-10-1 (a) (1) (B) is directory, as opposed to mandatory, and if the statute is mandatory, what (if anything) is the remedy for DCS's failure to satisfy that requirement.

2. *Analysis*

(a) On appeal, Clark argues that the term "shall," as used in OCGA § 17-10-1 (a) (1) (B), is mandatory, and the Court of Appeals erred in concluding otherwise. We agree.

> In statutory interpretation cases such as this, it is well settled that a statute draws its meaning from its text. When interpreting a statute, we must give the text its plain and ordinary meaning, view it in the context in which it appears, and read it in its most natural and reasonable way. For context, we may look to other provisions of the same statute, the structure and history of the whole statute, and the other law – constitutional, statutory, and common law alike – that forms the legal background of the statutory provision in question. When

12

we construe such statutory authority on appeal, our review is de novo.

*State v. Coleman*, 306 Ga. 529, 530 (832 SE2d 389) (2019) (citations and punctuation omitted). "Moreover, 'we assume that the General Assembly meant what it said and said what it meant when it comes to the meaning of statutes.'" *Stubbs v. Hall*, 308 Ga. 354, 363 (4) (840 SE2d 407) (2020) (citation omitted).

With these principles in mind, we turn to the statutory text in question, OCGA § 17-10-1 (a) (1) (B). This statute provides:

(i) When a defendant with no prior felony conviction is convicted of felony offenses or is charged with felony offenses and is sentenced pursuant to subsection (a) or (c) of [OCGA § 16-13-2] or Article 3 of Chapter 8 of Title 42, and the court imposes a sentence of probation or not more than 12 months of imprisonment followed by a term of probation, the court shall include a behavioral incentive date in its sentencing order that does not exceed three years from the date such sentence is imposed. Within 60 days of the expiration of such incentive date, if the defendant has paid all restitution owed; not had his or her probation revoked in the immediately preceding 24 months, or when the court includes a behavioral incentive date less than two years from the date a sentence was imposed, not had his or her probation revoked during such period; and not been arrested for anything other than a nonserious traffic offense as defined in [OCGA § 35-3-37], the Department of Community Supervision

13

shall notify the prosecuting attorney and the court of such facts. The Department of Community Supervision shall provide the court with an order to terminate such defendant's probation which the court shall execute unless the court or the prosecuting attorney requests a hearing on such matter within 30 days of the receipt of such order. The court shall set the matter for a hearing as soon as possible but not more than 90 days after receiving the order to terminate. The court shall take whatever action it determines would be for the best interest of justice and the welfare of society.

(ii) This subparagraph is intended to be retroactive and shall be applied to any case in which a person with no prior felony conviction was convicted of felony offenses or was charged with felony offenses and was sentenced pursuant to subsection (a) or (c) of [OCGA § 16-13-2] or Article 3 of Chapter 8 of Title 42, and the court imposed a sentence of probation or a sentence of not more than 12 months of imprisonment followed by a term of probation. A behavioral incentive date shall as a matter of law be included in the sentencing order, but in a case where it was not, the behavioral incentive date shall be three years from the date such sentence was imposed.

OCGA § 17-10-1 (a) (1) (B) (i) and (ii) (emphasis supplied).

At issue here is whether the term "shall"—as used throughout the pertinent provisions of the statute—demonstrates that these procedures are meant to be mandatory or are merely directory. The

14

Court of Appeals relied on the following rule of statutory construction to conclude that OCGA § 17-10-1 (a) (1) (B) is directory:

> Language contained in a statute which commands the doing of a thing within a certain time, when not accompanied by any negative words restraining the doing of the thing afterward, will generally be construed as merely directory and not as a limitation of authority, and this is especially so where no injury appeared to have resulted from the fact that the thing was done after the time limited by the plain wording of the Act. . . . *A statutory provision is generally regarded as directory where a failure of performance will result in no injury or prejudice to the substantial rights of interested persons, and as mandatory where such injury or prejudice will result.*

*Sanchez v. Walker County Dept. of Family and Children Svcs.*, 237 Ga. 406, 410 (229 SE2d 66) (1976) (emphasis supplied). See also *Clark*, 371 Ga. App. at 42 (b) (holding that a failure by the DCS to provide notice within the 60-day window "will result in no injury or prejudice to the substantial rights of interested persons") (citing *Sanchez*, 237 Ga. at 410).

We disagree with the Court of Appeals that the statute is merely directory. First, the term "shall" is generally construed as mandatory unless there is a contextual reason to think it is merely

15

permissive. See *Bell v. Hargrove*, 313 Ga. 30, 33-34 (2) (867 SE2d 101) (2021). See also *Carr v. State*, 303 Ga. 853, 856-857 (2), 865 (5) (a) n.15 (815 SE2d 903) (2018) ("Although the word 'shall' is generally construed as a mandatory directive, this Court has explained that it need not always be construed in that fashion, if the context in which it is used indicates a permissive instruction.") (citation and punctuation omitted). There is no such contextual reason here; to the contrary, the context suggests that "shall" is mandatory. Among other things, the statute prescribes hard deadlines for both DCS and the trial court to carry out their tasks. See OCGA § 17-10-1 (a) (1) (B).

Second, the Court of Appeals erred in determining that DCS's failure to comply with the notice requirement of OCGA § 17-10-1 (a) (1) (B) in this context results in "no injury or prejudice to the substantial rights of interested persons," like Clark. *Clark*, 371 Ga. App. at 42 (b). The test the Court of Appeals applied from *Sanchez*, 237 Ga. at 410, is somewhat out of step with our more recent precedent. See *Nelson v. Strickland*, ___ Ga. ___, ___ (2) (___ SE2d

16

___) (Case No. S24A1386, decided on January 28, 2025) (citation omitted). But, even under *Sanchez*, the statute is mandatory here because Clark's substantial rights may be affected. In circumstances where DCS notifies the prosecuting attorney and the trial court of a defendant's compliance with the terms of OCGA § 17-10-1 (a) (1) (B) (i)—i.e., that restitution has been paid, probation has not been revoked in the immediately preceding 24 months, and there have been no arrests for anything other than nonserious traffic offenses— such notice is of benefit to that defendant as it could potentially result in the termination of his or her probation. And, without such notification from DCS, the trial court may not otherwise review the terms of this defendant's probation, which could result in prejudice to the defendant's "substantial rights." *Sanchez*, 237 Ga. at 410. We therefore conclude that the notice requirement imposed by OCGA § 17-10-1 (a) (1) (B) on DCS is mandatory.

(b) Although we have concluded that OCGA § 17-10-1 (a) (1) (B) is mandatory, our analysis does not end there—because determining that the statutory provision is mandatory does not answer what

17

happens if DCS does not comply with the statute. To that end, Clark argues on appeal that, because the notice requirement of OCGA § 17-10-1 (a) (1) (B) is mandatory, DCS's failure to comply with this mandatory language results in the automatic termination of Clark's probation. In support of this argument, Clark asserts that the statute "creates a system in which there is a presumption that probation will be terminated early when the behavioral incentive date is reached as long as the enumerated conditions have been met," and in such circumstances, DCS "'shall provide the court with an order to terminate,'" which "'the court shall execute' unless the prosecution or the court intervene to request a hearing on the matter within 30 days." OCGA § 17-10-1 (a) (1) (B) (i). According to Clark, if DCS had provided a proposed order to the trial court in this case but a hearing had not been requested or scheduled within 30 days, the terms of the statute "would clearly require termination." On this basis, Clark contends that the "the only sensible remedy . . . in the absence of a timely hearing [is that] a qualifying petitioner's probation must be terminated as a matter of law."

We disagree. Reading OCGA § 17-10-1 (a) (1) (B) "in its most natural and reasonable way," *Stubbs*, 308 Ga. at 363 (4), we recognize that the statute provides that DCS "shall"—i.e., is required to—notify the prosecuting attorney and the trial court when a defendant has complied with and met the conditions of OCGA § 17-10-1 (a) (1) (B) (i). However, the statute does not provide that, if DCS fails to provide such notice, the trial court "shall" then execute an order terminating the defendant's probation. OCGA § 17-10-1 (a) (1) (B) (i).

As explained by the Court of Appeals, "DCS's notice to the State and the trial court during the 60-day window merely triggers a procedure that, in part, requires DCS to submit an order terminating probation" to the trial court. *Clark*, 371 Ga. App. at 43 (c). But, even in instances where DCS properly provides notice and a proposed order terminating probation to the trial court, the statute provides that the trial court or the prosecuting attorney may still request "a hearing on such matter," and following such hearing, "[t]he court shall take whatever action it determines would be for

19

the best interest of justice and the welfare of society." OCGA § 17-10-1 (a) (1) (B) (i). In other words, the trial court maintains the discretion to decide whether to terminate a defendant's probation in this context—termination is not automatic. See id. In the same way, when DCS fails to submit a proposed order terminating probation to the trial court in order to trigger this statutory procedure, automatic termination of a defendant's probation is not the remedy for any such failure on DCS's part. See id.

As it stands, nothing in the text of OCGA § 17-10-1 or the remaining provisions of Chapter 10 of Title 17—the chapter governing sentences and punishment—"provides a remedy, let alone an express remedy," *Stubbs*, 308 Ga. 365 (4), for DCS's failure to notify the prosecuting attorney and the trial court of a defendant's compliance with the provisions necessary to have his or her probation terminated.[4] See OCGA § 17-10-1 (a) (1) (B) (i). And the

---

[4] We note that, in instances where DCS has not provided notice in compliance with OCGA § 17-10-1 (a) (1) (B), a defendant could file a mandamus action against DCS to initiate the process. See OCGA § 9-6-20 et seq. Additionally, a defendant always has the right to move for early termination of his or her probation. See OCGA § 42-8-37 (b).

content of the statute does not reflect that the General Assembly meant for a defendant to be automatically released from probation as a result of DCS's noncompliance with the notice requirement. See id. What the statute does reflect is that the parties are permitted to be heard in these matters and that the General Assembly vested the trial court with the absolute discretion to make determinations that are in "the best interest of justice and the welfare of society." Id.

We therefore hold that DCS's failure to provide notice under OCGA § 17-10-1 (a) (1) (B) does not result in the automatic termination of a defendant's probated sentence, and we affirm the judgment of the Court of Appeals, albeit for a different reason. See *Martinez-Arias v. State*, 313 Ga. 276, 293 (4) (869 SE2d 501) (2022) ("Because the Court of Appeals's ultimate judgment affirming Martinez-Arias's convictions was correct, we affirm."); *Nordahl v. State*, 306 Ga. 15, 27 (829 SE2d 99) (2019) (affirming the judgment of the Court of Appeals under the "right for any reason" doctrine).

*Judgment affirmed. All the Justices concur.*