**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: November 18, 2025

S25G0491. THE STATE v. GREATHOUSE.

ELLINGTON, Justice.

The State challenges the Court of Appeals' decision vacating the trial court's revocation of Appellee Jody Greathouse's probation. See *Greathouse v. State*, 373 Ga. App. 769 (2024). Put simply, the plain language of OCGA § 42-8-34.1(b) controls this case. It limits a trial court's authority to revoke probation without the occurrence of at least one of two conditions. Because neither of those conditions occurred in this case, the Court of Appeals correctly vacated the revocation of Greathouse's probation.[1]

In November 2023, Appellee Jody Greathouse was on probation when he was arrested following an allegation that he violated his probation. Greathouse entered into a Consent Order of

---

[1] We thank the Georgia Association of Criminal Defense Lawyers for its amicus brief.

Revocation ("Consent Order") which revoked probation but allowed the balance of his sentence to be suspended upon his successful completion of a nine-month inpatient drug treatment program. The Consent Order included provisions that waived Greathouse's rights to the filing of a written probation revocation petition, to a revocation hearing, and to have counsel appointed for the instant revocation. But the Consent Order also included a provision that prospectively waived "any constitutional or statutory right to a probation revocation hearing" that Greathouse might have for any unknown, future alleged probation violation.[2]

---

[2] The provision specifically read:

The Defendant specifically waives any constitutional or statutory right to a probation revocation hearing based upon any subsequent violation of this provision. In the event that a court of competent jurisdiction finds probable cause, upon oath, affirmation, or sworn affidavit, that the defendant has failed to successfully complete [a substance abuse] program, then the defendant's ongoing participation in such program shall be terminated immediately and, upon arrest of the defendant for such violation by any law enforcement officer, the defendant shall be returned to confinement at the county jail or other facility from which the defendant was released and the provision to serve the balance of 2022SUCR140 in the Georgia Department of Corrections of said sentence shall be enforced.

On April 3, 2024, a community supervision officer submitted an affidavit to the trial court alleging that Greathouse left the in-patient treatment facility prior to the completion of the program, and on the same day, the trial court issued another arrest order, authorizing law enforcement to apprehend Greathouse and transfer him into the custody of the Georgia Department of Corrections to "serve the balance of his probation in … custody."  Greathouse filed a motion to vacate the arrest order and to modify the sentence on revocation of probation, and the court ordered "said motion [to] come on for a hearing" and ordered its arrest order to be suspended until the motion was heard.

On April 25, 2024, the trial court held a hearing on the enforcement of the Consent Order, during which Greathouse's counsel asked that the Consent Order be vacated because Greathouse entered into it without counsel and asked that the trial court hear Greathouse's argument on the merits. During the April 25 hearing, the State did not present any evidence supporting the revocation of probation, either in the form of the sworn affidavit or

the testimony of the officer alleging the violation. Instead, the State explained that "if [Greathouse] wants to have a hearing and a petition filed, then he will sit here and his parole date will be even later than it would have been," if the Consent Order he signed was to be enforced. At the conclusion of the hearing, the trial court denied the motion.

On appeal, the Court of Appeals vacated the trial court's order. *Greathouse*, 373 Ga. App at 773. Specifically, the Court of Appeals held that the trial court was not authorized to revoke any part of Greathouse's probated or suspended sentence without Greathouse admitting the violation as alleged or without a revocation hearing according to OCGA § 42-8-34.1(b).[3] See *Greathouse*, 373 Ga. App. at 773. The Court of Appeals explained that the statute did not provide for a waiver of the right to a future hearing but, rather, it explicitly prohibited a court from revoking a probated or suspended sentence

___

[3] OCGA § 42-8-34.1(b) provides that "[a] court may not revoke any part of any probated or suspended sentence unless the defendant admits the violation as alleged or unless the evidence produced at the revocation hearing establishes by a preponderance of the evidence the violation or violations alleged." OCGA § 42-8-34.1(b).

4

"unless the due process safeguards incorporated into the statute are satisfied." Id.

The State sought certiorari review, arguing that many rights in criminal proceedings may be waived, including the right to a probation revocation hearing, and that due process does not prohibit a probationer from opting into an alternate dispute resolution to avoid future ramifications. At the certiorari stage, the parties suggested that the Court of Appeals decided that due process prohibited a waiver to a probation revocation hearing. We granted review to consider whether a defendant may prospectively waive constitutional or statutory rights to a probation revocation hearing in the event of a future violation of probation.[4] However, upon further review and consideration of the Court of Appeals's opinion, it is now clear to us that that question is not presented by the Court of Appeals's opinion. The Court of Appeals did not make a ruling regarding waiver or due process but, rather, issued a decision

---

[4] The case was orally argued before this Court on August 26, 2025.

5

explaining the statute's limitation on a trial court's authority to revoke probation.[5] See OCGA § 42-8-34.1(b). We now conclude that OCGA § 42-8-34.1(b) limits the trial court's authority to revoke a probated or suspended sentence without first either receiving the probationer's admission to the violation or conducting a hearing where the evidence establishes the violation by a preponderance of the evidence. And a defendant's purported waiver of any such hearing, such as the purported waiver of a hearing included in the Consent Order here, will not alleviate the trial court's obligation to hold such a hearing if the defendant has not admitted to the violation. Accordingly, we affirm.

To begin, we recall the well-settled principles that guide our consideration of a statute's proper construction. "In interpreting statutes, we presume that the General Assembly meant what it said

---

[5] The dissenting opinion faults the majority opinion for not answering the question this Court posed when granting certiorari. But as we have explained, our post-grant review of the Court of Appeals's opinion and the record made clear that question is not actually presented in this case. Any attempt to answer it would create the kind of advisory opinion our precedent makes clear is improper. See *Fulton County v. City of Atlanta*, 299 Ga. 676, 678 (2016) (noting that advisory opinions "exceed the authority of the courts").

and said what it meant." *State v. Arroyo*, 315 Ga. 582, 583 (2023) (citation and quotation marks omitted). We afford the statutory text its "plain and ordinary meaning, view it in the context in which it appears, and read it in its most natural and reasonable way." *State v. Cook*, 317 Ga. 659, 660 (2023) (citation and quotation marks omitted). "For context, we may look to other provisions of the same statute, the structure and history of the whole statute, and the other law—constitutional, statutory, and common law alike—that forms the legal background of the statutory provision in question. *Clark v. State*, 321 Ga. 35, 40 (2025). "When, as here, statutory text is clear and unambiguous, our interpretive task begins and ends with the text itself." *Arroyo*, 315 Ga. at 584 (citation and quotation marks omitted).

Under OCGA § 42-8-34.1(b), "[a] court *may not revoke* any part of any probated or suspended sentence *unless* the defendant admits the violation as alleged *or unless* the evidence produced at the revocation hearing establishes by a preponderance of the evidence the violation or violations alleged." OCGA § 42-8-34.1(b) (emphasis

7

supplied). On appeal, the State does not cite to OCGA § 42-8-34.1(b). But, rather, the State argues that the absence of an express anti-waiver provision in OCGA § 42-8-34.1(b) means that Greathouse could validly waive his right to a probation revocation hearing because, if the General Assembly had intended to prohibit a probationer's ability to waive his right to a hearing, it would have included an express anti-waiver provision in the statute.

It is true that, generally, "[i]f there is no constitutional, statutory, or public policy prohibition against waiver, an accused may validly waive any right." *Thomas v. State*, 260 Ga. 262, 263 (1990). The State, however, overlooks the express language from subsection (b) that restricts the court's authority to revoke probation without the probationer first admitting the allegation or without the court holding a hearing, irrespective of any attempt by the probationer to waive his right to the hearing. See OCGA § 42-8-34(b).[6] The statute explicitly provides two paths that would allow a

[6] Although the Court of Appeals suggested that a probationer may bypass a hearing by admitting the violation, we do not read the Court of

8

court to revoke probation. Either (1) the probationer admits the allegation; or (2) the court conducts a hearing. See OCGA § 42-8-34.1(b).

The dissenting opinion nonetheless contends that Greathouse was authorized to waive the hearing here because of the background legal rule that generally allows defendants to waive rights given to them, so long as there is no constitutional, statutory, or public policy prohibition against the waiver, and the dissenting opinion cites to a number of cases that illustrate that general principle. See, e.g., *Thomas*, 260 Ga. at 263; *Green v. State*, 318 Ga. 610, 614 (2024); *Blackwell v. State*, 299 Ga. 122, 123 (2016). But those cases are distinguishable because the statutes or constitutional provisions that provided the criminal defendant the right that was waived in those cases did not involve express statutory language that

---

Appeals's statement in context as concluding that a probationer may waive the right to a future hearing under OCGA § 42-8-34.1(b). See *Greathouse*, 373 Ga. App. at 773 ("The statute anticipates the possibility that the probationer might elect to admit the violation but there is no provision for the waiver of the right to a future hearing on future alleged violations."). Instead, the court was describing the contents of the statutory provision.

restricted a court's authority to act, as OCGA § 42-8-34.1(b) does. And here, unlike in those cases, the express statutory language contained in OCGA § 42-8-34.1(b) that the court "may not" act "unless" one of the two preconditions occurred and the absence of any language expressly permitting waiver of the two requirements means that Greathouse could not circumvent the trial court's requirement to hold a hearing in the absence of Greathouse's admission to the violation.

The dissenting opinion contends that the trial court satisfied OCGA § 42-8-34.1(b) when it held the hearing on April 25. But the State has made no argument in this Court—and made no argument in the Court of Appeals—that the April 25 hearing satisfied the trial court's obligations under OCGA § 42-8-34.1(b). And the record suggests that the purpose of that hearing was to address Greathouse's motion to vacate the arrest order and modify the sentence on revocation of probation—not to discuss the merits of revoking Greathouse's probation—as the State even implicitly acknowledged to the trial court that the April 25 hearing did not

10

constitute the hearing required by OCGA § 42-8-34.1(b) when it argued that the filing of a petition and a subsequent hearing would delay his parole date even further.

Because the statutory text is clear and unambiguous and there is no contextual reason to suggest that the trial court had the authority to revoke probation without one of the two preconditions prescribed in § 42-8-34.1(b) having occurred first, our interpretive task begins and ends there. See *Arroyo*, 315 Ga. at 584; see also *Clark*, 321 Ga. at 42 ("[T]he term 'shall' is generally construed as mandatory unless there is a contextual reason to think it is merely permissive. There is no such contextual reason here; to the contrary, the context suggests that 'shall' is mandatory." (citations and quotation marks omitted)). The trial court was bound by the statute to hold a hearing before it could revoke any portion of Greathouse's probated or suspended sentence in the absence of Greathouse's admission to the allegations.

*Judgment affirmed. All the Justices concur, except LaGrua, J., who dissents.*

11

LAGRUA, Justice.

We granted certiorari in this case to decide whether a defendant may "prospectively waive constitutional or statutory rights to a probation revocation hearing in the event of a subsequent violation of the terms of probation." And, while the majority opinion has now concluded it would be improper to decide this issue because "that question is not presented by the Court of Appeals' opinion," Maj. Op. at 6, the majority opinion nevertheless implicitly rejects such a waiver by reading the language of OCGA § 42-8-34.1(b) to preclude a trial court's "authority to revoke probation without the probationer first admitting the allegation or without the court holding a hearing, irrespective of any attempt by the petitioner to waive his right to the hearing." Maj. Op. at 8. Furthermore, the majority opinion's conclusion that we cannot address the prospective waiver question because the Court of Appeals "did not make a ruling regarding waiver or due process but, rather, issued a decision explaining the statute's limitation on a trial court's authority to revoke probation," Maj. Op. at 6, is belied by the Court of Appeals's

opinion and the briefing below. See *Greathouse v. State*, 373 Ga. App. 769, 773 (2024).

In the State's briefing before the Court of Appeals, the State explicitly argued that, under federal and Georgia law, a probationer can waive his rights to a probation revocation hearing and "freely and intelligently opt[] into an alternative dispute process to address future nonfeasance" by prospectively waiving those rights. The State further claimed that, in this case, the record demonstrated that Greathouse had voluntarily and knowingly waived his rights to a probation revocation hearing for future probation violations when he entered into an agreement and consent order with the State that expressly memorialized his understanding of those rights and his voluntariness in agreeing to waive them. In vacating the trial court's order, the Court of Appeals necessarily rejected the State's prospective waiver argument, concluding that, "[w]hile there is little doubt that a criminal defendant … can waive most rights, due process demands that the petitioner be afforded the opportunity to deny or explain the circumstances surrounding an alleged probation

violation." *Greathouse*, 373 Ga. App. at 773.

Accordingly, I believe the certiorari question has been adequately presented in this case, and I also believe—as the majority opinion points out in criticizing the dissent—that, had we meaningfully tackled this question, I likely would have concluded that a probationer's "right to a future probation revocation hearing on future alleged violations" is yet another right a defendant is permitted to waive under our case law. *Greathouse*, 373 Ga. App. at 773. See also e.g., *Green v. State*, 318 Ga. 610, 614 (2024) (constitutional and statutory rights may be waived in the guilty plea context if the waiver is both voluntary and intelligent); *State v. Houston*, 312 Ga. 853, 857 (2021) (allowing a voluntary and intelligent waiver of a criminal defendant's Sixth Amendment right to counsel); *Rawles v. Holt*, 304 Ga. 774, 777 (2018) (allowing a voluntary and intelligent waiver of a criminal defendant's right to file a habeas corpus petition); *Blackwell v. State*, 299 Ga. 122, 123 (2016) (allowing the knowing and intelligent waiver of a criminal defendant's right to withdraw his guilty plea any time prior to

sentencing); *Rush v. State*, 276 Ga. 541, 541 (2003) ("[T]his Court has held that a criminal defendant may waive his statutory right to appeal a conviction in exchange for the State's agreement not to seek the death penalty at sentencing, so long as the waiver is voluntary, knowing, and intelligent."); *Thomas v. State*, 260 Ga. 262, 263 (1990) ("If there is no constitutional, statutory, or public policy prohibition against waiver, an accused may validly waive any right.").

Moreover, it is worth noting that, here, Greathouse was not denied the opportunity to be heard as he alleges or as the Court of Appeals concluded. *Greathouse*, 373 Ga. App. at 773 ("Greathouse had no opportunity to contest the validity of the sworn allegations or explain the circumstances surrounding his failure to successfully complete the inpatient treatment program."). The record reflects that, after pleading guilty to one count of possessing less than two grams of methamphetamine and one count of possessing a drug-related object in October 2022, Greathouse was sentenced as a first offender to three years' probation with certain special conditions, including the obligation to pay a fine, to "undergo a substance abuse

15

evaluation as directed by the probation office," and to "successfully complete any course of treatment recommended by the probation office at [Greathouse's] own expense." Between March 2023 and November 2023, Greathouse violated the terms of his first offender probation sentence multiple times by failing to complete a drug evaluation, failing to attend classes, and failing to complete drug treatment, among other violations, and thereafter, consent orders revoking his probation were entered by the trial court on May 8, 2023, August 14, 2023, and December 4, 2023. In these consent orders, Greathouse admitted to his probation violations and was given a chance to have his probation reinstated and to come into compliance and address his apparent drug addiction outside of incarceration. And, despite Greathouse's multiple probation violations in 2023, his first offender status was never revoked.

In each consent order, Greathouse agreed to waive his right to have a written petition filed with the trial court for revocation of his probation, his right to an attorney in the probation revocation case, and his right to a probation revocation hearing, acknowledging that

"no one has coerced or threatened me to obtain this waiver, and I waive these rights freely and voluntarily." And, in the last of the consent orders with the State entered on December 4, 2023—this one agreeing to suspend Greathouse's sentence upon his successful completion of a nine-month inpatient treatment program— Greathouse also agreed that he would waive "any constitutional or statutory right to a probation revocation hearing based upon any subsequent violation." This waiver also expressly contemplated that, in the event the trial court found "probable cause" based "upon oath, affirmation, or sworn affidavit"—i.e., evidence—that Greathouse had failed to complete the substance abuse program, Greathouse's participation in the treatment program would be "terminated immediately," and he would be arrested and "returned to confinement at the county jail or other facility."

When Greathouse again violated the terms of his probation by leaving the treatment facility before completing the program, a community supervision officer submitted a sworn affidavit to the trial court, resulting in the issuance of an order on April 3, 2024 for

17

Greathouse's arrest and transfer to the Department of Corrections. As the majority opinion notes, Greathouse's attorney then filed a motion to vacate the arrest order and to modify his sentence on the revocation of probation on April 18, 2024. In that motion, Greathouse requested the opportunity to be heard to "contest or explain the allegations against him"—presumably to explain why he left the treatment facility before completing the program as required by the terms of his agreed-upon sentence. The very same day—April 18, 2024—the trial court issued an order granting Greathouse's request to suspend the order directing that Greathouse be transferred into the custody of the Department of Corrections and scheduling a "show cause" hearing for April 25, 2024 on Greathouse's motion to modify his sentence of probation. At that April 25 hearing, Greathouse appeared via "Webex," and Greathouse's trial counsel appeared in person. During the hearing, trial counsel asserted that "this can primarily be handled just with argument," and he presented no evidence to support Greathouse's motion or his reasons for leaving the facility and failing to comply

with the terms of his probation. The State's evidence was already in the record, having been presented on April 3, 2024 in the form of the community supervision officer's sworn affidavit. At the conclusion of the hearing, the trial court ruled that "without any proof," it could not grant Greathouse's motion to modify his sentence of probation.

Thus, contrary to the Court of Appeals's conclusion that Greathouse did not have an opportunity "to contest the validity of the sworn allegations or explain the circumstances surrounding his failure to complete the inpatient treatment program," *Greathouse*, 373 Ga. App. at 773, Greathouse was "afforded the opportunity to deny or explain the circumstances surrounding [his] alleged probation violation," id., but he failed to present any evidence in support of his motion to modify his sentence of probation or his reasons for leaving the treatment facility. And now, at the hearing the majority says must occur, the trial court can revoke Greathouse's first offender status, which has not yet been done, and impose the maximum sentence for his two offenses. See OCGA § 42-8-16(d). See also OCGA §§ 16-13-30(c)(2) and 16-13-32.2(b).

19

Because the trial court held a hearing that afforded Greathouse an opportunity to address his probation violations, arguably satisfying the provisions of OCGA § 42-8-34.1(b); because I believe Greathouse could have knowingly and intelligently waived his right to a probation revocation hearing under our law; and because I think we should address the important question regarding the permissibility of a waiver in these circumstances, I must respectfully dissent.