NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: February 17, 2026

S25A1129. CARTER v. THE STATE.

ELLINGTON, Justice.

Donald Carter appeals his convictions for malice murder and other crimes in connection with the shooting death of Samuel Sanders.[1] Carter contends that the trial court erred by failing to

---

[1] The crimes occurred on or about March 28, 2022. On May 23, 2022, a Jackson County grand jury returned an indictment charging Carter with malice murder (Count 1); felony murder (Count 2); aggravated assault of Sanders (Count 3); possession of a firearm during the commission of a felony (Count 4); aggravated assault (Count 5); and possession of a firearm during the commission of a felony (Count 6). At the conclusion of a jury trial that began on May 15, 2023, the jury found Carter guilty on all counts. The trial court sentenced Carter on May 17, 2023, and amended the sentence on May 18, 2023, sentencing Carter to life in prison with the possibility of parole for malice murder (Count 1). The court merged the felony murder (Count 2) into the malice murder conviction and merged one aggravated assault count (Count 3) into the felony murder conviction (Count 2). The court imposed a five-year prison term for one count of possession of a firearm during the commission of a felony (Count 4), to be served consecutively to Count 1; a 20-year prison term for the other count of aggravated assault (Count 5), to be served consecutively to Count 4; and merged the other count of possession of a firearm during the commission of a crime (Count 6) into Count 4.

We note that the trial court erred at sentencing as follows. First, the

conduct an adequate hearing on the issue of Carter's mental competence to stand trial after the Georgia Department of Behavioral Health and Developmental Disabilities ("the Department") found him competent to stand trial and that his trial counsel was ineffective for failing to file a special plea of mental incompetence to stand trial. As explained more thoroughly below, in the absence of a special plea of incompetence under OCGA § 17-7-

court erred by merging the felony murder count (Count 2) into the malice murder count (Count 1), rather than recognizing that Count 2 stood vacated by operation of law. See *Hulett v. State*, 296 Ga. 49, 53 (2014) ("[W]hen a valid guilty verdict is returned on both malice murder and felony murder of the same victim, the defendant should be sentenced for the malice murder, and the alternative felony murder count stands *vacated* by operation of law as simply surplusage." (quotation marks omitted)). While this error in nomenclature does not affect Carter's sentence and is otherwise harmless, we note that Count 2 was vacated by operation of law. See *Manner v. State*, 302 Ga. 877, 890-891 (2017). Additionally, the trial court purported to merge the aggravated assault count (Count 3) into the felony murder count (Count 2), but because the felony murder count should have been vacated by operation of law, there was no felony murder count into which the underlying aggravated assault could merge, and the trial court erred by failing to merge the aggravated assault (Count 3) into the malice murder conviction (Count 1). See *Marshall v. State*, 309 Ga. 698, 700 (2020) (quotation marks and citation omitted). But because this merger error makes no practical difference, we decline to correct the error. See id.

Carter timely filed a motion for new trial on May 18, 2023, which was amended twice through new counsel on September 26 and November 4, 2024. After an evidentiary hearing, the trial court denied the amended motion for new trial on December 6, 2024, and the case was docketed in this Court to the August 2025 term and submitted for a decision on the briefs.

2

130(b)(2), the trial court was not required to conduct a hearing on Carter's mental competence to stand trial, and because the record does not show that any new evidence came to light that presented a basis for challenging the Department's findings, Carter was not prejudiced by trial counsel's failure to request one. For the reasons explained below, we affirm.

1. Prior to trial, Carter's attorney filed an affidavit requesting a mental evaluation, stating that Carter "has difficulty focusing on and grasping the details of his case long enough" to help with his defense, operates in "tangential reasoning," provides irrelevant information in response to questions, and has a non-sequential sense of time. Instead of holding a hearing to determine whether a competency evaluation should be conducted, the court found the affidavit sufficient and ordered the Department to conduct the mental competency evaluation. The court explained that "[d]efense counsel [showed] that there [was] reason to question [Carter's] competence to stand trial." Neither party objected to this procedure.

A psychologist with the Department conducted an interview

and forensic evaluation of Carter on November 8, 2022, and opined that Carter was competent to stand trial. Ultimately, the psychologist determined that Carter was "psychiatrically stable" and displayed no "evidence of significant mental health symptoms and/or cognitive dysfunction." He was capable of understanding the nature and object of the proceedings against him and of rendering assistance to his counsel in providing a proper defense. Specifically, his speech was appropriate; he was responsive to instruction; he displayed good control of his emotions and behavior; and he did not reference any delusional beliefs when discussing his case. Neither party challenged the results of the evaluation or requested a hearing to do so.

The evidence presented at trial showed that Carter worked for his friend, Sanders, whose business provided moving services. In March 2022, Sanders was hired to move furniture from Philadelphia to Georgia, and Carter and Sanders's grandson assisted with the move. The group left Philadelphia in a parcel van with a U-Haul trailer attached. Sanders drove, Sanders's grandson was in the

4

passenger seat, and Carter sat in a folding chair behind Sanders in the open-space area of the van that was open to the cab. The group arrived at their destination and unloaded the cargo, and Sanders paid Carter for his work. On the way back to Philadelphia, the group stopped at a gas station, where Carter purchased alcoholic beverages – "some Mad Dog" wine and a "four pack of beer" – which he began to consume. The more Carter drank, the more agitated he became. Carter became increasingly abrasive and began harassing and threatening Sanders's grandson.

At one point while traveling on I-85, Carter began to urinate in the back of the van. Sanders stopped the van and told Carter to get out and urinate on the shoulder of the road. Afterward, Sanders and Carter got back into the van, and Sanders continued driving. At that point, Carter said to Sanders, "Sam, what am I going to do with you?" Carter pulled out a gun, cocked it, and started shooting. Sanders pulled over the van and tried to calm Carter down, and Sanders gestured for his grandson to flee the vehicle. As the grandson fled, he heard several gunshots. He looked back and saw

Carter get out of the back of the van and flee into the woods. The grandson tried calling Sanders but got no response and then called 911. Law enforcement arrived on scene and located Sanders in a pile of debris on the right side of the van with two gunshot wounds in his back. Sanders was still breathing but unable to talk. Law enforcement noted a strong smell of alcohol coming from the van.

The next morning, law enforcement found Carter asleep in a shed on a nearby farm, lying on top of a gun. When questioned by law enforcement, Carter stated that he drank a six-pack of beer and a pint of wine but did not remember any of the events from the van or his arrest and questioned whether he had been drugged. He stated that he did not remember shooting Sanders and would never have done so because Sanders was a good friend, and he does not drink to the point of blacking out.

Carter testified in his own defense at trial to the following. He drinks every day, but does not do drugs, and after completing his work moving items, Carter bought a four-pack of Colt 45 malt liquor and a pint of Mad Dog 20/20 wine at a gas station. Sanders's

6

grandson came out of the gas station, approached Carter with a plastic spray bottle filled with a liquid, and asked Carter to smell it, and when Carter smelled it, the grandson sprayed the liquid, which smelled like coconut and almond, in Carter's face. The group left the gas station, and Sanders and Sanders's grandson completed another job. Carter fell asleep and did not remember anything that occurred after falling asleep until the next morning either because he "had a bad beer or … [t]hat stuff he sprayed on me was working."

At times, Carter's trial testimony was inconsistent with his prior statements to police and with the video of law enforcement's apprehension of him, and when confronted with the transcript of that video, Carter alleged that the transcript had been altered.

2. Carter contends that the trial court erred by failing to conduct an adequate hearing on the issue of Carter's mental competence to stand trial pursuant to OCGA §§ 17-7-129(a) (2011), 17-7-130(b)(1)(d) (2017), and 17-7-130(d) (2017).[2] Without the filing

---

[2] We also note that Carter makes no constitutional claims regarding the necessity for a hearing.

of a special plea of mental incompetency under OCGA § 17-7-130(b)(2), the applicable versions of those statutes[3] did not require the trial court to hold a hearing following the competency evaluation it ordered, and thus, the trial court did not err.

Under OCGA § 17-7-129(a) (2011),

> [w]hen information becomes known to the court sufficient to raise a bona fide doubt regarding the accused's mental competency to stand trial, the court has a duty, sua sponte, to inquire into the accused's mental competency to stand trial. The court may order [the Department] to

---

[3] We note that the parties cited different versions of the pertinent Code provisions in their briefs, as some of the provisions were amended in 2025. But the Act enacting the changes to OCGA §§ 17-7-129 and 17-7-130 included a provision stating, "This Act shall become effective on July 1, 2025, and shall apply to any motions made or hearings or trials commenced on or after such date." Ga. L. 2025 (vol. 1) at 732, § 4. As this Court has explained,

> when our legislature enacts or amends (or repeals) a statute, the legislature has the power to decide when the statute will become effective. When the legislature chooses an effective date, that choice necessarily informs what the law is at the time of an appeal. … If, for instance, the legislature makes clear that a statute applies only to proceedings commenced after the law's effective date, the legislature has told us that "the law at the time of appeal" is that the new law applies only *after* its effective date, and so the old law applies before that date.

*Profet v. State*, 322 Ga. 731, 740-41 (citations and quotation marks omitted). In this case, the relevant affidavit was filed and the evaluation was conducted in 2022, and the trial took place in 2023. Accordingly, the versions of these provisions that were enacted in 2011 and later amended in 2017 are the applicable versions of the statutes at the time of all relevant proceedings in the underlying case instead of the 2025 versions.

8

> conduct an evaluation of the accused's competency. If the court determines that it is necessary to have a trial on the issue of competency, the court shall follow the procedures set forth in Code Section 17-7-130.

OCGA § 17-7-129(a) (2011). Under OCGA § 17-7-130(b)(1) (2017), in pertinent part,

> [i]f an accused files a motion requesting a competency evaluation, the court may order the [D]epartment to conduct an evaluation by a physician or licensed psychologist to determine the accused's mental competency to stand trial and, if such physician or licensed psychologist determines the accused to be mentally incompetent to stand trial, to make recommendations as to restoring the accused to competency.

OCGA § 17-7-130(b)(1) (2017). Although not referenced in Carter's first enumeration of error, the subsequent provision, OCGA § 17-7-130(b)(2) (2017), is essential to our analysis of this enumeration. That provision provides, in pertinent part, "If the accused files a special plea alleging that the accused is mentally incompetent to stand trial, it shall be the duty of the court to have a bench trial, unless the state or the accused demands a special jury trial, to determine the accused's competency to stand trial." OCGA § 17-7-130(b)(2) (2017). And finally, the full text of OCGA § 17-7-130(d)(1)

9

(2017) reads:

> [i]f the [D]epartment's physician or licensed psychologist determines at any time that the accused is mentally competent to stand trial, the [D]epartment shall notify the court, and the accused shall be discharged into the custody of a sheriff of the jurisdiction of the court unless the charges which led to the evaluation or the civil commitment have been dismissed, in which case, the accused shall be discharged from the department. In the event a sheriff does not appear and take custody of the accused within 20 days after notice to the appropriate sheriff of the jurisdiction of the court, the presiding judge of the court, and the prosecuting attorney for the court, the department shall itself return the accused to one of the court's detention facilities, and the cost of returning the accused shall be paid by the county in which the court is located. All notifications under this paragraph shall be sent by certified mail or statutory overnight delivery, return receipt requested. As an alternative to returning the accused to the sheriff of the jurisdiction of the court, the department may hold the accused at the department's secure facility instead of at the court's detention facilities whenever a department physician or licensed psychologist provides written notice to the court that such detention in the court's facilities would be detrimental to the well-being of the accused. Such alternative detention shall continue only until the date of the accused's trial. Regardless of where the accused is held, the court shall hold a bench trial to determine the accused's mental competency to stand trial within 45 days of receiving the [D]epartment's evaluation or, if demanded, shall conduct a special jury trial within six months of receiving the [D]epartment's evaluation.

OCGA § 17-7-130(d)(1) (2017).

10

In order to determine whether the trial court erred by failing to have a hearing following the psychologist's mental competency evaluation and the psychologist's finding Carter to be competent, we start by analyzing the text of the relevant statutes and presume:

> that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.

*White v. State*, 305 Ga. 111, 114-15 (2019). "For context, we may look to other provisions of the same statute, the structure and history of the whole statute, and the other law — constitutional, statutory, and common law alike — that forms the legal background of the statutory provision in question." *Clark v. State*, 321 Ga. 35, 40 (2025). And we generally "avoid[] interpreting statutes in a manner that renders any portion of them surplusage or meaningless." *Wetzel v. State*, 298 Ga. 20, 28 (2015). See also *Scott v. State*, 295 Ga. 39, 40 (2014) ("[A] statute is to be construed to give sensible and intelligent effect to all its provisions and to refrain from any interpretation

11

which renders any part of the statute meaningless.").

First, as to OCGA § 17-7-129(a), the statute did not mandate such a hearing. The statute contemplated that "*if* the court determines that it is necessary to have a trial on the issue of competency, the court *shall* follow the procedures set forth in" OCGA § 17-7-130, but the provision itself did not require a hearing or trial on the issue. See OCGA § 17-7-129(a) (emphasis added). The only requirement the statute imposed upon the trial court was to, sua sponte, "inquire into the accused's mental competency to stand trial" after learning any information that gives rise to a doubt about the accused's competency. Here, upon the filing of the affidavit by Carter's initial trial counsel indicating concerns about Carter's competency, the court ordered the Department to conduct an evaluation, as specifically contemplated in the statute. Therefore, the trial court complied with its only obligation imposed by this provision.

Second, the language of OCGA § 17-7-130(b)(1) (2017) did not require the holding of a hearing that Carter seeks. That statute only

12

provided that "[i]f an accused file[d] a motion requesting a competency evaluation, the court *may order* the [D]epartment to conduct an evaluation," and mentioned nothing about a hearing, required or otherwise, following the evaluation. See OCGA § 17-7-130(b)(1) (2017) (emphasis added).

But the question of whether Carter should have been afforded a hearing under the third provision Carter cites, OCGA § 17-7-130(d)(1) (2017), does not have as straightforward an answer. Under the specific portion of OCGA § 17-7-130(d)(1) that Carter highlights, if the Department's "physician or licensed psychologist determines *at any time* that the accused is mentally competent to stand trial … the court shall hold a bench trial to determine the accused's mental competency to stand trial within 45 days of receiving the [D]epartment's evaluation." OCGA § 17-7-130(d)(1). Carter contends that the "shall" language of that portion of the statute required the court to conduct a hearing. The State contends that this provision does not apply to someone like Carter who was never deemed incompetent, whether by the court or by the Department. Upon

13

review of the statutory text as a whole, and in the context of the surrounding provisions of the statute, we do not agree with the State's reasoning and interpretation of OCGA § 17-7-130(d). We nevertheless conclude that Carter is not entitled to a trial on his competency under OCGA § 17-7-130(d).

Although the last sentence of OCGA § 17-7-130(d)(1) provides that the court "shall hold a bench trial to determine the accused's mental competency to stand trial within 45 days of receiving the department's evaluation," that provision does not exist in isolation. Rather, it must be interpreted in the "context in which it appears." See *Clark*, 321 Ga. at 40 (instructing that, to view the text in the context in which it appears, we may look to "other provisions of the same statute" and "the structure … of the whole statute"). There is only one provision of OCGA § 17-7-130 that places a duty on the court to hold a trial to determine an accused's competency: OCGA § 17-7-130(b)(2), following the filing of a special plea of incompetency. Therefore, the language regarding a bench trial in OCGA § 17-7-130(d)(1) is best read as setting a deadline for holding

14

a bench trial that was properly requested in a special plea of incompetency pursuant to OCGA § 17-7-130(b)(2). A contrary understanding — i.e., an interpretation that a court would be required to hold a competency trial under OCGA § 17-7-130(d)(1) any time the Department finds an accused competent — would render the requirement of filing a special plea and the concomitant duty of the trial court to hold a bench trial on the accused's competency under OCGA § 17-7-130(b)(2) surplusage. See *Wetzel*, 298 Ga. at 28.

Moreover, OCGA § 17-7-130(b)(2), when read in isolation, does not set out any timing requirements for the holding of a trial. In contrast, reading subsections OCGA §§ 17-7-130(b)(2) and 17-7-130(d)(1) together and giving effect to both, see *Scott*, 295 Ga. at 40, OCGA § 17-7-130(b)(2) creates the duty for the trial court to hold a trial on competency upon the filing of a special plea of incompetency, and OCGA § 17-7-130(d)(1) provides for when the trial must take place – 45 days after receiving the Department's evaluation for a bench trial or six months after receiving the evaluation for a special

jury trial, if demanded.[4] Accordingly, because Carter did not file a special plea of incompetency under OCGA § 17-7-130(b)(2), the court was not required to hold a bench trial as to his competence under OCGA § 17-7-130(d)(1).

Because neither OCGA §§ 17-7-129(a) nor 17-7-130(b)(1) required the court to hold a competency hearing following the Department's finding of Carter's competence, because OCGA § 17-7-130(d)(1) is best understood as setting a deadline for a bench trial

---

[4] Another subsection, found later in the statute in OCGA § 17-7-130(f), also supports this conclusion:

> If, at any time, the department's physician or licensed psychologist determines that the accused is mentally incompetent to stand trial but later determines that the accused is mentally competent to stand trial, the court shall be so notified and shall order the accused detained or discharged in accordance with paragraph (1) of subsection (d) of this Code section. Any accused determined by a department physician or licensed psychologist to be mentally competent to stand trial and returned to the court as provided in subsection (d) of this Code section shall *again* be entitled to file a special plea as provided for in this Code section.

OCGA § 17-7-130(f) (emphasis added). By including language that the accused is to be returned to the court or discharged as provided in OCGA § 17-7-130(d)(1), and language that if the accused is returned to the court, the accused is "again" entitled to file a special plea of incompetency, this provision supports the conclusion that the last sentence of OCGA § 17-7-130(d)(1) providing for a bench trial is conditioned on the accused filing a special plea of incompetency under OCGA § 17-7-130(b)(2).

16

that is conditioned upon the filing of a special plea of incompetency, and because Carter did not file such a plea, Carter's claim that the trial court erred by failing to hold a hearing as to his mental competence fails.[5]

3. Carter also contends that his trial counsel was ineffective for failing to file a special plea of mental incompetence to stand trial. He contends that his counsel was unaware that if counsel had filed such a special plea, he would have had a right to a bench trial or jury trial as to his competency under OCGA § 17-7-130(b)(2) (2017) and that the failure to file one waived that right. Carter argues that his counsel's reliance on the Department's evaluation was unreasonable where counsel had ongoing doubts as to Carter's competency. He contends that, had counsel filed the plea and the trial court held the

---

[5] We note that Carter relies on a number of Court of Appeals cases that stand for the proposition that, "[e]ven where no special plea is filed, … where a question about a defendant's competence is raised, the trial court must hold an 'adequate hearing' on the issue." See *Crawford v. State*, 355 Ga. App. 401, 403-04 (2020). See also *Beach v. State*, 351 Ga. App. 237, 242 (2019). To the extent that these cases, or any others, interpret OCGA § 17-7-130(d)(1) to require the trial court to hold a hearing, irrespective of whether a special plea of incompetence was filed, those cases are overruled. See, e.g., *Cosby v. State*, 365 Ga. App. 574, 577 (2022).

17

required hearing, there is a reasonable probability that the trial court would have deemed Carter incompetent to proceed to his jury trial. Pretermitting whether this claim was adequately preserved for appeal, Carter's claim of ineffective assistance of counsel fails.

In order to succeed on his claim of ineffective assistance, Carter must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (1984). To satisfy the deficiency prong, Carter must show that counsel performed his duties "in an objectively unreasonable way, considering all the circumstances and in light of prevailing professional norms." *Moulder v. State*, 317 Ga. 43, 47 (2023) (quotation marks omitted). To satisfy the prejudice prong, Carter "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Palmer v. State*, 310 Ga. 668, 678 (2021) (quotation marks omitted). If Carter "fails to show either deficiency or prejudice, this Court need not examine the other prong of the

18

*Strickland* test." Id. (quotation marks omitted). The law "recognizes a strong presumption that counsel performed reasonably, and the defendant bears the burden of overcoming this presumption." *Evans v. State*, 315 Ga. 607, 611 (2023) (quotation marks omitted). "In reviewing a ruling on a claim of ineffective assistance of counsel, we defer to the trial court's findings of fact unless they are clearly erroneous, but we apply the law to the facts de novo." *Payne v. State*, 314 Ga. 322, 329 (2022) (quotation marks omitted).

Under OCGA § 17-7-130(b)(2), if an accused files a special plea of mental incompetence, the trial court must hold a bench trial, or a special jury trial if demanded, to determine the accused's competency to stand trial. OCGA § 17-7-130(b)(2). Here, Carter's trial counsel chose not to file the special plea. Assuming, without deciding, that Carter's trial counsel was deficient in this respect, Carter has failed to establish that he was prejudiced by this failure. Carter cannot show that there is a reasonable probability that, but for his trial counsel's failure to file a special plea of mental incompetence, the outcome of his trial would have been different

because there was evidence that Carter was competent and his attorneys concluded that a special plea of incompetency would not have been successful. See *Palmer*, 310 Ga. at 678.

At the evidentiary hearing on the motion for new trial, Carter's trial counsel, Danielle Kuntz, testified that she had concerns about Carter's mental competence, including that "he had an inability to keep thoughts on a train that actually made sense." However, Kuntz also testified that, although Carter sometimes seemed confused about criminal procedure, Carter's attorneys were able to prepare him to testify at trial, Carter was able to comprehend what his attorneys were asking him, and he understood the charges and the nature of the proceedings. Further, she testified that Carter was able to assist in preparing a defense and maintained his story that the coconut scented liquid that was sprayed in his face caused him to "black out" and be unable to remember what happened. Nevertheless, Kuntz felt that Carter was incompetent, so she asked her superior whether they needed to seek a second opinion.

Kuntz's supervisor, Donna Seagraves, testified that she

20

ultimately determined that a second expert opinion through an independent evaluation would not result in a different outcome than the one conducted by the Department. "Based on the legal standard," of whether Carter could assist in his defense, Seagraves believed Carter was competent. Specifically, she testified that he maintained his involuntary intoxication defense about the grandson spraying something in his face, causing him to "black out," throughout the entire duration of trial preparation – which he later maintained during his trial testimony – and there were no other viable defenses. When asked whether the attorneys considered requesting a jury trial regarding Carter's competence, Seagraves said, "The evaluation indicated that he was competent. We didn't have any information other than what was contained in the evaluation or seen by the evaluator. We didn't have any reason to believe that he didn't present to the evaluator the same way he presents to us." So Kuntz and Seagraves decided not to request a jury trial on the issue of Carter's mental competency to stand trial.

Here, it is true that, had counsel filed a special plea of mental

incompetence, the trial court would have been required to hold a trial, either by bench or by jury if demanded, under OCGA § 17-7-130(b)(2), which is the very relief that Carter sought in his motion for new trial and now on appeal. But at the motion for new trial hearing, Carter did not present any evidence or witness to testify as to Carter's incompetence or to suggest what evidence of his incompetence his trial counsel could have shown had they filed a special plea. See *Lupoe v. State*, 300 Ga. 233, 245 (2016) (holding that trial counsel's failure to move for a continuance so defendant could file a motion to compel the State to produce video statements did not prejudice the defendant because the defendant "did not present any evidence as to what additional information a motion to compel the videos would have revealed or how that information would have improved his position"). See also *Palmer*, 310 Ga. at 678 (holding that trial counsel's failure to file a notice of alibi testimony did not prejudice the defendant because, at the motion for new trial hearing, he never presented the testimony of the alleged alibi witness or a legally acceptable substitute). Further, Carter's

attorneys testified that he understood the charges and nature of the proceedings and that he was able to maintain the same theory of defense throughout trial preparation and at trial. And his counsel's superior testified that there was no additional evidence outside of what was presented to the Department's psychologist to suggest that he was not competent to stand trial to be presented at a jury trial as to his competence. Because Carter has not shown that there is a reasonable probability that a trial on the issue of his mental competence would result in a finding of incompetence, he has not shown that there is a reasonable probability that, had counsel filed a special plea, the ultimate outcome at his jury trial would have been different. See *Palmer*, 310 Ga. at 678. Accordingly, Carter has failed to show ineffective assistance of his trial counsel for failing to file the special plea of mental incompetence.

*Judgment affirmed. All the Justices concur.*